

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**219 SOUTH DEARBORN STREET**
**CHICAGO ILLINOIS 60604**

**MICHAEL W. DOBBINS**
   **Clerk of Court**

**OFFICE OF THE CLERK**

**October 8, 2009**

Ms. Terry Nafisi, Clerk
United States District Court
United States Courthouse
312 North Spring Street, Room G-8
Los Angeles, CA 90012-4701

FILED
CLERK U.S. DISTRICT COURT
OCT 1 3 2009
CENTRAL DISTRICT OF CALIFORNIA
BY ____ DEPUTY

**Re: USA v. Michael Barrett**
**Case: 09cr810-1**   09-2270 M

Dear Clerk of Court:

Enclosed please find the certified copy of the docket entries in connection with removal proceedings conducted in this District regarding the above named defendant.

As of January 18, 2005 for civil and criminal cases, our court uses electronic case filing. You may access our electronic case file and print copies of electronically filed documents by following the procedures on the attached Instruction Sheet. You will need Adobe Acrobat reader loaded on your computer in order to view the documents. If you are an electronic court, you may upload the documents. Please **DO NOT MAKE THE ENCLOSED INSTRUCTION SHEET A PART OF THE OFFICIAL RECORD** as it contains your login and password to our system. This login and password should not be shared with anyone other than federal court personnel who would have a need to access our electronic case file system.

All documents filed prior to electronic filing are included in this transfer package.
**Document #4 Order setting conditions of release.**
Subsequent paper documents filed after 1/18/05 are also included:
(List document numbers)

Please acknowledge receipt of the above documents on the enclosed copy of this letter.

Sincerely yours,

Michael W. Dobbins, Clerk

by:
s/ Ellenore Duff, Deputy Clerk

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 810 - 1 | **DATE** | 10/5/2009 |
| **CASE TITLE** | USA vs. Michael D. Barrett | | |

**DOCKET ENTRY TEXT**

Detention hearing held.   The defendant is ordered voluntarily removed  to the Eastern  District of California at Los Angeles.   The defendant is ordered released.  *AK*

Docketing to mail notices.

00:12

| | Courtroom Deputy Initials: | AC |
|---|---|---|

AO 199A (Rev. 6/97) Order Setting Conditions of Release                     Page 1 of __3__ Pages

# United States District Court

_Northern_ _____ **DISTRICT OF** _Illinois_

**DOCKETED**

**OCT 7 – 2009**

UNITED STATES OF AMERICA

V.

**ORDER SETTING CONDITIONS
OF RELEASE**

_Michael David Barrett_
**Defendant**

Case Number: _09 CR 810_

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1) The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2) The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing before any change in address and telephone number.

(3) The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at (if blank, to be notified) _the Duty Magistrate_

_Judge's courtroom,_ _____ on _October 23 2009 @ 2 P.M._
**Place**                                    **Date and Time**

_3rd Floor, Roybal Federal Building, 255 E Temple St,_

_Los Angeles, CA 90012_

**Release on Personal Recognizance or Unsecured Bond**

IT IS FURTHER ORDERED that the defendant be released provided that:

( ✔ )  (4) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( ✗ )  (5) The defendant executes an unsecured bond binding the defendant to pay the United States the sum of
_four-thousand five hundred_ _____ dollars ($ _4,500_ )
in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.



**Additional Conditions of Release**

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

(   ) (6)   The defendant is placed in the custody of:

(Name of person or organization) _____

(Address) _____

(City and state) _____ (Tel. No.) _____

who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Signed: _____     _____
                      Custodian or Proxy                                      Date

( X ) (7)   The defendant shall:

( X ) (a)   report to the _Pre-trial services as directed_

telephone number _____, not later than _____.

(   ) (b)   execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property: _____

(   ) (c)   post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described _____.

(   ) (d)   execute a bail bond with solvent sureties in the amount of $_____.

(   ) (e)   maintain or actively seek employment.

(   ) (f)   maintain or commence an education program.

( X ) (g)   surrender any passport to: _pre-trial services (by 10/6/09)_

( X ) (h)   obtain no passport.

( X ) (i)   abide by the following restrictions on personal association, place of abode, or travel: _travel limited to U.D. at Illinois, except for travel to Los Angeles for court_

( X ) (j)   avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to: _____

(   ) (k)   undergo medical or psychiatric treatment and/or remain in an institution as follows: _____

(   ) (l)   return to custody each (week)day as of _____ o'clock after being released each (week)day as of _____ o'clock for employment, schooling, or the following limited purpose(s): _____

(   ) (m)   maintain residence at a halfway house or community corrections center, as deemed necessary by the pretrial services office or supervising officer.

( X ) (n)   refrain from possessing a firearm, destructive device, or other dangerous weapons.

( X ) (o)   refrain from ( ) any ( X ) excessive use of alcohol.

( X ) (p)   refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

( X ) (q)   submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.

(   ) (r)   participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial services office or supervising officer.

( X ) (s)   refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibit substance testing or electronic monitoring which is (are) required as a condition(s) of release.

( X ) (t)   participate in one of the following home confinement program components and abide by all the requirements of the program which ( ) will or ( ) will not include electronic monitoring or other location verification system. You shall pay all or part of the cost of the program based upon your ability to pay as determined by the pretrial services office or supervising officer.

( X ) (i)   **Curfew.** You are restricted to your residence every day ( X ) from _9pm_ to _6am_ or ( ) as directed by the pretrial services office or supervising officer; or

( ) (ii)   **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the pretrial services office or supervising officer; or

( ) (iii)   **Home Incarceration.** You are restricted to your residence at all times except for medical needs or treatment, religious services, and court appearances pre-approved by the pretrial services office or supervising officer.

( X ) (u)   report as soon as possible, to the pretrial services office or supervising officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

( X ) (v)   _not use any device capable of accessing the internet_

(   ) (w)   _____

(   ) (x)   _____

WHITE COPY — COURT        YELLOW — DEFENDANT        GREEN — PRETRIAL SERVICES        BLUE — U.S. ATTORNEY        PINK — U.S. MARSHALL

## Advice of Penalties and Sanctions

**TO THE DEFENDANT:**

**YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:**

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to 10 years of imprisonment, and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to tamper with a witness, victim or informant; to retaliate or attempt to retaliate against a witness, victim or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgement of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Signature of Defendant

107 WHITE Birch Lane
_____
Address

WESTMONT IL 630590-5153
_____
City and State                    Telephone

## Directions to United States Marshal

(X) The defendant is ORDERED released after processing.
(  ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: October 5, 2009
_____

_____
Signature of Judicial Officer

_____
Name and Title of Judicial Officer

**FILED**
*10-5-09*
OCT 0 5 2009

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

AO 98A   (Rev. 11/07) Appearance and Compliance Bond

# UNITED STATES DISTRICT COURT

NORTHERN _____ District of _____ ILLINOIS

UNITED STATES OF AMERICA

v.

*Michael Barrett*
Defendant

## APPEARANCE AND COMPLIANCE BOND

Case Number: *09 CR 810*

☑ Non-surety: I, the undersigned defendant acknowledge that I and my ...
☐ Surety: We, the undersigned, jointly and severally acknowledge that we and our ...
personal representatives, jointly and severally, are bound to pay to the United States of America the sum of
$ _____ , and there has been deposited in the Registry of the Court the sum of
$ _____ in cash or _____ (describe other security).
The conditions of this bond are that the defendant, *Michael D. Barrett*
                                                                          Name

is to (1) appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred; (2) comply with all conditions of release imposed by the court, and (3) abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review), which shall continue until such time as the undersigned are exonerated.

If the defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other laws of the United States.

This bond is signed on *10/5/09* at *219 S. Dearborn Chgo*
                                         Date                              Place

Defendant _____

Surety _____

Surety _____

Signed and acknowledged before me on *10/6/09*
                                                            Date

*Alicia Costello*
Signature of Judge/Clerk
*Deputy Clerk*

Order Form (01/2005)

Case 1:09-cr-00810   Document 2   Filed 10/03/2009   Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 810 - 1 | **DATE** | 10/3/2009 |
| **CASE TITLE** | USA vs. Michael D. Barrett | | |

**DOCKET ENTRY TEXT**

Removal proceedings held. Defendant appears in response to arrest on 10/2/09.    Defendant waives identity hearing.   Richard M. Beuke appears  as counsel for defendant. Detention hearing set for l0/5/09 at 1:00 p.m. The defendant is ordered detained. *A⊬*

Docketing to mail notices.

00:12

| | Courtroom Deputy Initials: | AC |
|---|---|---|

09CR810 - 1 USA vs. Michael D. Barrett

AUSA Steve Grimes 312-469-6049

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)  Case No. **09 CR  810 1**
v. )
)  Magistrate Judge Arlander Keys
MICHAEL DAVID BARRETT, )      **FILED**
aka Mark Bennett )       *10 - 3 - 09*
OCT 0 8 2009

## AFFIDAVIT IN REMOVAL PROCEEDINGS

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

I, Justin Vallese, personally appearing before United States Magistrate Judge Arlander Keys

and being duly sworn on oath, state that as a federal law enforcement officer, I have been informed

that MICHAEL DAVID BARRETT, also known as Mark Bennett (hereinafter "BARRETT"), has

been charged by Criminal Complaint in the Central District of California, with the following

criminal offense: interstate stalking, in violation of Title 18 United States Code, Section

2261A(2)(A). I have been informed through official channels that, on October 2, 2009, a warrant

for the arrest of BARRETT was issued pursuant to the Criminal Complaint. A copy of the arrest

warrant and criminal complaint is attached.

Justin Vallese
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 3rd day of October, 2009.

ARLANDER KEYS
United States Magistrate Judge

COPY

AO 91
Rev. 11/97

**CRIMINAL COMPLAINT**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>MICHAEL DAVID BARRETT<br>aka "Mark Bennett" | DOCKET NO. |
| | MAGISTRATE'S CASE NO.<br>09- **09-2270M** |

| Complaint for violation of 18 U.S.C. § 2261A(2)(A) (Interstate Stalking). |
|---|

| NAME OF MAGISTRATE JUDGE<br><br>Hon. Alicia G. Rosenberg | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br><br>Los Angeles County, CA |
|---|---|---|
| DATES OF OFFENSE<br>Between on or about July 28, 2009, and on or about July 22, 2009 | PLACE OF OFFENSE<br>Los Angeles County and elsewhere | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

**SEE ATTACHMENT**

FILED
CLERK, U.S. DISTRICT COURT
OCT - 2 2009
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

---

**BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:**

   (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br><br>Tanith Rodgers |
|---|---|
| | OFFICIAL TITLE<br>Federal Bureau of Investigation |

| Sworn to before me and subscribed in my presence, | |
|---|---|
| SIGNATURE OF MAGISTRATE JUDGE(1)<br><br>ALICIA G. ROSENBERG | DATE<br><br>Oct. 2, 2009 |

1) See Federal Rules of Criminal Procedure rules 3 and 54.

WLH:wlh          REC:

## ATTACHMENT

### [18 U.S.C. § 2261(A)(2)(a)]

Between on or about July 28, 2008, and on or about July 22, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant MICHAEL DAVID BARRETT, with the intent to harass, to place under surveillance with intent to harass and intimidate, and to cause substantial emotional distress to a person in another state, namely, E.A., used facilities of interstate commerce, including cellular telephone networks, electronic mail, and Internet websites, to engage in a course of conduct that caused substantial emotional distress to E.A.

( )                                ( )

## AFFIDAVIT

I, Tanith Rogers, being duly sworn, hereby state as follows:

1.    I am employed as a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") and have been employed by the FBI since March 2008.  I am currently assigned to the Cyber Squad in the Los Angeles, California field office.  In that assignment, I am responsible for investigating computer and high-technology crimes, and I am trained and authorized to investigate the offenses alleged herein.  Prior to becoming an FBI agent, I completed the 21-week FBI Basic Agent Training Course in Quantico, Virginia, which included training from the FBI regarding computer technology, computer fraud, intellectual property crimes, and white collar crime.  I graduated from the University of Washington where I completed a degree in Politics and Values.  Prior to my work in the FBI, I was a Narcotics Detective for the City of Federal Way Police Department in Washington State.  During the eight and a half years I worked for the police department, I investigated a plethora of crimes included but not limited to, computer sex crimes, drug crimes and violent crimes.

2.    This affidavit is made in support of a criminal complaint and arrest warrant for Michael D. Barrett of Westmont, Illinois, also known as "Mark Bennett," ("BARRETT") for interstate stalking, in violation of Title 18, United States Code, Section 2261A(2)(A).

3.   The facts set forth in this affidavit are based primarily upon my conversations with FBI SA Justin Vallese, who is the case agent in this matter.  This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, except where in quotations.

## DEFINITIONS

4.   Based upon my training, experience, and research, I know that:

a.   __Internet Protocol (IP) Address__: An Internet Protocol (IP) address is a unique number that is assigned to all devices connected to the Internet.  IP addresses are typically owned in blocks by Internet Service Providers and leased to users for access to the Internet.

b.   __E-mail__: E-mail, also known as "electronic mail," is a popular means of transmitting messages and/or files in an electronic environment between computer users.  When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, and then transmitted to its final destination.  A server is a

2

computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

c.   **E-mail Headers:** Every e-mail comes with a header which is one part of an e-mail structure. It has basic information such as from whom the e-mail comes, to whom it is addressed, the date/time it was sent, and the subject of the e-mail. This basic information is shown by default in the "basic headers" shown by most e-mail programs. However, there is other detailed technical information accessible within the e-mail header. This detailed technical information can be viewed in most e-mail programs by causing the program to display the "full header." Virtually all e-mail programs can be set to show only basic header or full header, and it is up to the users to set the program whether to view only brief header or full header. A full header will have information such as the mail server's name that the e-mail passed through on its way to the recipient, the sender's IP address, and even the name of the e-mail program and the version used. This information cannot be found in a brief header. A full header is a crucial investigative tool for cases involving e-mail abuse, worm-infected e-mail, harassment and forgeries.

d.   **URL:** A Uniform Resource Locator ("URL") is an address on the Internet made up of a string of characters, such

3

as www.google.com.  A URL identifies a page on the World Wide Web
and enables computers and other devices to visit it.

### RELEVANT LEGAL STATUTE

5.    Title 18, United States Code, Section 2261A states, in
pertinent part, that

Whoever . . .

(2) with the intent -

(A) to . . . harass . . . or place under surveillance
with intent to . . . harass, or Intimidate, or cause
substantial emotional distress to a person in another State
. . .

uses the mail, any interactive computer service, or any
facility of interstate or foreign commerce to engage in a
course of conduct that causes substantial emotional distress
to that person . . . shall be punished as provided in
section 2261(b) of this title.

### SUMMARY

6.    As explained in more detail below, Individual A is a
female reporter with ESPN.  ESPN is a national cable television
sports network.  Individual A was surreptitiously recorded
without her knowledge or consent on video while nude in her own
hotel room on at least two occasions.  These videos of Individual
A were subsequently offered for sale to an Internet website
TMZ.com by the user of the email account handsfouryou@yahoo.com.

4

TMZ.com did not purchase the videos, but they were nevertheless later posted to the Internet on other websites.  One of these websites was video.google.com, and the person posting the video again used the email account handsfouryou@yahoo.com.  The posting of the videos caused Individual A substantial emotional distress. The user of the email account handsfouryou@yahoo.com is believed to be BARRETT.

## DETAILS OF THE CRIME

The Victim

7.   SA Vallese learned the following based upon multiple interviews with Individual A, conversations with her lawyers Marshall Grossman ("Grossman") and Daniel Alberstone ("Alberstone"), and SA Vallese's investigation so far:

a.   Individual A is a female reporter for ESPN who covers college football, college basketball, Little League World Series, and Major League Baseball.  Individual A also appeared at the ESPN ESPY awards.

b.   Individual A travels all over the country for ESPN to cover sporting events, including college football, major league baseball, and college basketball.

c.   When traveling for ESPN, Individual A stays in hotel rooms, where she prepares for her broadcasts.

5

( )                              ( )

**Videos Are Taken Of Individual A In Her Hotel Rooms**

9.    As described in the following paragraphs, SA Vallese has reviewed eight videos, two of which are the same, provided by Grossman.  Each of these videos show Individual A in the nude in a hotel room.  The videos appear to be taken from the hallway through the peephole in the hotel room door.  Based upon SA Vallese's review of the videos, seven of the videos appear to be taken in one hotel room, while the last video appears to have been taken in a different hotel room.  Specifically, the furniture in the last video is different from the furniture in the others.

10.   On July 27, 2009, SA Vallese interviewed Grossman.

a.    Grossman provided SA Vallese with digital copies of the eight videos.

b.    Grossman also provided SA Vallese with a digital copy of the website NSFWPOA.com, where Grossman stated that the videos had been posted on or about July 15, 2009.

11.   On July 29, 2009, Individual A reviewed the videos. Individual A confirmed that the videos were of her alone in her room.  Because of certain clothing seen in the video, Individual A stated that she believed that several of the videos depicted her in one hotel room at the Marriott Nashville, at Vanderbilt University in Tennessee, where ESPN records showed that

6

Individual A had stayed in room 1051 on September 4, 2008.
Individual A was in Nashville to cover a college sporting event.

12.   On or about August 14, 2009, SA Vallese spoke with FBI
Special Agent Victor Rodriguez (hereinafter "SA Rodriguez") who
told SA Vallese the following:

a.   On or about August 13, 2009, SA Rodriguez visited
room 1051 of the Nashville Marriott at Vanderbilt University.

b.   Found in the front door of room 1051 was a
tampered peephole.  The inner eyepiece of the peephole screws
into a sleeve for the peephole.  The eyepiece had been tampered
with and was shortened, and it appeared to have been hack-sawed.

c.   SA Rodriguez forwarded to SA Vallese a photograph
of an original peephole eyepiece alongside the tampered peephole
eyepiece.  In addition to the photograph, SA Rodriguez also
forwarded a video taken from outside the room looking in through
the tampered eyepiece.

13.   Based upon SA Vallese's review of the video provided by
SA Rodriguez, the videos provided by Grossman, the discovery of
the tampered peephole, and the information from Individual A and
ESPN, SA Vallese believes that this is the room in which seven of
the eight Individual A videos were taken.

14.   On August 28, 2009, SA Vallese received records and
items from the Area General Manager of the Nashville Marriott at

Vanderbilt.  From the records provided by the Area General Manager SA Vallese learned the following:

    a.    Individual A stayed at the Nashville Marriott from September 3, 2008 through September 5, 2008.  While at the Nashville Marriott, Individual A had stayed in room 1051.

    b.    Records for the Marriott Nashville showed that "Michael Barrett," who registered using BARRETT's home address, stayed in hotel room 1049 on the evening of September 4, 2008.

    15.    On September 22, 2009, SA Vallese spoke to the Area General Manager of Nashville Marriott at Vanderbilt.  The Area General Manager provided records to SA Vallese via email, and informed SA Vallese of the following:

    a.    Rooms 1049 and 1051 are adjacent rooms which share a wall, with room 1049 being a corner unit.  Rooms 1049 and 1051 are located in an alcove of the floor they are on.

    b.    BARRETT reserved a room at the Nashville Marriott on September 2, 2009.  When he made the reservation, BARRETT asked specifically for a room next to Individual A.  In computer records of the reservation for BARRETT's stay at the Nashville Marriott provided by the Area General Manager, a line read "INFO-GST RQST TO RM NXT TO [Individual A]".  Another line of the request listed an email address for BARRETT of "MIKE.BARRETT@COMBINED.COM".

8

c.   Per the records provided by the Area General Manager, SA Vallese learned the following:

i.   Two "Folios," or guest bills, related to BARRETT's stay at the Marriott in Nashville in September 2008. One Folio was numbered 1412 and the other Folio was numbered 2122.

ii.  Folio 1412 was placed on BARRETT's credit card numbered XXXX XXXXXX X1509.

iii. Folio 2122 was placed on BARRETT's credit card numbered XXXX XXXX XXXX 3209.

d.   From the records related to Folio 1412, SA Vallese observed a room service charge to room 1049. Per the receipt for the charge, the room service occurred on September 4, 2008 at 9:26 pm and bore a signature which appears to be the initial "M."

e.   The Area General Manager noted that he had previously provided an unaltered peephole to SA Vallese from the hotel's spare stock (discussed below).

16.   On September 22, 2009, SA Vallese reviewed the report of an interview done by SA Rodriguez on August 13, 2009, at the Nashville Marriott with the Area General Manager for the hotel. From the report SA Vallese learned the following:

a.   The Area General Manager confirmed the obvious difference between the tampered with peephole and an unaltered peephole.

9

b.    The hotel last underwent renovations between November 2007 through March 2008.  Room doors were repainted, but were not changed or moved to other rooms as a result.

17.   On September 22, 2009, SA Vallese compared the tampered, shortened peephole from the door of room 1051 in which Individual A had stayed, to an unmodified, standard peephole that the Area General Manager had sent to SA Vallese.  From SA Vallese's review of the two peepholes, SA Vallese noted the following:

a.    The unmodified, standard peephole is made up of two parts, an outer cylindrical sleeve, and an inner cylindrical eyepiece which screws into the sleeve.  Both are threaded with the outer sleeve having threads on its interior and the inner eyepiece having threads on its exterior.  The inner eyepiece also has a circular portion with a lens which remains outside of the door even after the eyepiece has been screwed completely into the door.  The lens has a metal casing which surrounds it, and attaches to threaded cylinder which screws into the sleeve.

b.    The peephole from room 1051 was shortened so that only 3 mm (approximately 0.12 inch) of thread remained.  SA Vallese also examined a standard peephole and found that 24 mm (approximately 0.945 inch) of thread existed.

c.    Based on SA Vallese's training and experience, a person who intended to remove the peephole eyepiece from a door

with the purpose of surreptitiously viewing a hotel room's inhabitant would have wanted to do so quickly and quietly so as to avoid detection.  By shortening the length of the peephole eyepiece, it could be removed quickly and easily from the door without much noise.

      d.   Based on SA Vallese's conversation with SA Rodriguez and SA Vallese's knowledge and experience, SA Vallese formed the belief that the shortened peephole eyepiece would need to have been sawed through in order to be shortened.  From SA Vallese's observation of the shortened peephole eyepiece, SA Vallese found tool marks on the metal casing surrounding the lens, and longitudinal tool marks where it appeared that the eyepiece cylinder was sawed through.  Based on SA Vallese's knowledge and experience, SA Vallese believes that in order to saw through the peephole's eyepiece cylinder a clamp or vice of some sort would need to have been attached to the eyepiece so it could be secured whilst being sawed through.  In addition, a clamp could have been used to remove or install the eyepiece to the door.

      18.   In reviewing the length of the recordings of the videos taken of Individual A, SA Vallese noted that several of the videos were forty-two seconds in length.  These videos of Individual A were taken while she was in the same room at the Nashville Marriott and seemed to be in sequence.  Based on these

( )                                    (  )

facts, SA Vallese formed the opinion that the person who had
taken the video would have taken one continuous video of
Individual A if the recording device was capable of doing so. SA
Vallese also noted that the videos themselves were slightly
"grainy" and of a lower resolution than what often would be taken
with a standard video camera.  Based on these observations, SA
Vallese formed the opinion that a cell phone video camera could
have been used to take the videos of Individual A.

**The Videos Are Offered For Sale Via handsfouryou@yahoo.com**

19.  On Wednesday, January 28, 2009, and Thursday, January
29, 2009, e-mails were sent to the Internet gossip magazine
"TMZ.com" from the handsfouryou@yahoo.com email address.

20.  Grossman stated in his July 27, 2009, interview that he
had had conversations with H.L. of TMZ.com.  H.L. had told
Grossman that the user of handsfouryou@yahoo.com had offered to
sell videos of Individual A to TMZ.  Grossman further stated that
TMZ had provided the full header information of the two e-mails
from handsfouryou@yahoo.com related to the Individual A videos.

21.  On July 27, 2009, Grossman provided to SA Vallese, and
SA Vallese reviewed, the full header information provided to
Grossman and Alberstone by TMZ.  During that review SA Vallese
noted the following:

a.  TMZ is located in Los Angeles, California.

b.  The first full header revealed the following:

12

i.   An e-mail was sent by "Mark Bennett[1] <handsfouryou@yahoo.com>" on Wednesday January 28, 2009 at 13:48:29 -0800 (PST) to Dennis.Broad@tmz.com.

ii. The subject of the e-mail was "RE:TMZ.com tips:".

iii. The full header also revealed an attachment to the e-mail with the filename "TMZ#1.3gp"

iv. The IP address of the sender was 204.153.84.10 (hereinafter "the Combined IP address").

c.   The second full header revealed the following:

i.   An e-mail was sent by "Mark Bennett <handsfouryou@yahoo.com>" on Thursday January 29, 2009 at 14:19:08 -0800 (PST) to Dennis.Broad@tmz.com.

ii. The subject of the e-mail was "RE:TMZ.com tips:".

iii. The full header also revealed two attachments with the filenames "TMZ#2.3gp" and "TMZ#3.3gp".[2]

iv. The IP address of the sender was 166.216.128.77 (hereinafter "the AT&T Mobility IP address").

---

[1] Based on SA Vallese's training and experience, SA Vallese knows that when setting up email accounts some users attempt to stay anonymous or obfuscate their true identity by using alias names.

[2] The filenames of the attachments to the emails sent to TMZ from handsfouryou@yahoo.com are 3GP (or ".3gp" as seen above) file formats. A 3GP file format is a multimedia mobile phone video file format. In general, 3G refers to third generation, a generic wireless industry term for high-speed mobile data delivery over cellular networks.

13

( )                           ( )

22.   SA Vallese reviewed a TMZ website posting dated July 20, 2009, which stated that the videos of Individual A posted to the Internet had been offered for sale.

23.   Individual A stated during an interview that she was not familiar with the name "Mark Bennett," nor had she heard of handsfouryou@yahoo.com.  In a later interview, SA Vallese presented Individual A with a photograph of BARRETT in a photo array of six photos.  Individual A did not identify BARRETT as someone that she knew.

24.   On August 4, 2009, SA Vallese interviewed a Security Architecture Employee from Combined Insurance Company of America, in Chicago, Illinois.[3]  Among other things the Security Architecture Employee told SA Vallese the following:

a.   The Combined IP address was Combined Insurance's main IP address.

b.   The Combined IP address was a NAT (Network Address Translation) IP address for all of the company's North American offices.

25.   On August 5, 2009, Wireless Data Service Provider Corporation ("WDSPC"), in Pennsylvania, provided via facsimile information related to the AT&T Mobility IP address.  WDSPC

_____

[3]As will be shown later in this affidavit, publicly available documents suggest that Combined is BARRETT's employer.

14

administered IP addresses for several wireless data companies and
leased the AT&T Mobility IP address to AT&T Mobility.

26.   On September 11, 2009, SA Vallese spoke to a
representative in the AT&T National Compliance Center.   Among
other things, the representative told SA Vallese the following:

a.   There were no IP records available for the AT&T
Mobility IP address for Thursday, January 29, 2009.

b.   In general, IP addresses that are assigned to
mobile devices are only stored by AT&T for three to seven days.[4]

**Milwaukee Hotel**

27.   On September 24, 2009, SA Vallese received records from
AT&T related to the account of BARRETT (account number XXXXX6804)
for telephone number (XXX) XXX-5350.   From the records SA Vallese
was provided by AT&T and from SA Vallese's interview of a
representative from the AT&T Compliance Center, SA Vallese
learned the following in regards to AT&T account number
XXXXX6804:

a.   The account belongs to "Mike Barrett, 1000
Milwaukee Ave., FL 6, Glenview, IL 60025."[5]   BARRETT had been a

---

[4] In general, mobile device or cell phone IP addresses are assigned to the device when a user starts an
internet browsing session. Based on the number of sessions and the administrative burden of maintaining IP records
and logs, this information is not held for long periods of time by mobile service providers.

[5] On September 24, 2009, SA Vallese visited the Internet website for Combined Insurance Company at
www.CombinedInsurance.com and learned that the Global Corporate Headquarters for Combined Insurance was
located at 1000 North Milwaukee Avenue, Glenview, Illinois 60025.

customer with AT&T since February 10, 2006, and began receiving service under account number XXXXX6804 on July 28, 2008.

  b. As of September 24, 2009, BARRETT held an active phone with AT&T Mobility identified with the IMEI/ESN: XXXXXXXXXXX1573.

  c. This IMEI/ESN ending in -1573 belonged to an LG CU720 Shine phone.

  d. The AT&T Mobility representative with whom SA Vallese spoke referred SA Vallese to the website for the LG CU720 Shine phone.  From SA Vallese's review of the website SA Vallese learned the following:

    i. The LG CU720 Shine phone can capture and store video.

    ii. A user can send, receive, or delete video MMS[6] with the LG Shine.

  28. On or about September 25, 2009, SA Vallese reviewed the AT&T invoice with call logs for account number XXXXX6804 belonging to BARRETT for telephone number (XXX) XXX-5350.  From SA Vallese's review of those logs, SA Vallese learned the following:

---

  [6] MMS (Multimedia Message Service) is a way in which messages containing multimedia objects, such as images, audio, or video, can be sent over a telecommunications network between capable mobile phones and other electronic devices.

a.   On August 18, 2008, at 8:20 p.m., a multimedia message was sent from BARRETT's phone to the email address of "handsfouryou@".[7]

b.   On August 25, 2008, at 8:42 a.m., a multimedia message was sent from BARRETT's phone to the email address of "handsfouryou@".

c.   On September 4, 2008, at 7:32 p.m., a multimedia message was sent from BARRETT's phone to the email address of "handsfouryou@".

d.   On September 4, 2008, at 8:17 p.m., two multimedia messages were sent from BARRETT's phone to the email address of "handsfouryou@".

e.   On January 27, 2009, at approximately 2:29 p.m., three Multimedia Messages were sent from BARRETT's phone to the email address "Mdb1861@yahoo".[8]

f.   From July 28, 2008, through July 30, 2008, the logs revealed a number of calls placed to telephone numbers within the (414) and (262) area codes.  SA Vallese performed an online query of those dialed numbers and discovered that the telephone numbers belonged to fourteen different Milwaukee, Wisconsin, area hotels.  Thirteen different Milwaukee area hotels

---

[7] The full email address was truncated due to the formatting of the AT&T invoice.

[8] Based on SA Vallese's training and experience, when some individuals create an email address they will use initials and other personal identifiers.  As it applies to mdb1861@yahoo, the letters MDB may refer to Michael David Barrett with reference to his date of birth.

17

were called prior to calls placed to the Radisson Airport Hotel,[9] 6331 South 13th Street, Milwaukee, Wisconsin, at telephone number (XXX) XXX-1500. The Radisson Airport Hotel is the last hotel in the Milwaukee area called.[10] The logs revealed the Radisson Airport Hotel was called six times during the time period July 28, 2008, 5:46 p.m. and July 29, 2008, at 7:57 a.m.

29. On September 2, 2009, Alberstone forwarded SA Vallese an email containing a spreadsheet with Individual A's hotel stays for ESPN from September 2007 through September 2008. From SA Vallese's review of the spreadsheet, SA Vallese learned that Individual A stayed at the "Radisson Airport, 6331 S. 13th St., Milwaukee WI 53221" checking into the hotel on July 29, 2008 for ESPN's Wednesday Night Baseball on July 30, 2008.

30. On September 25, 2009, Individual A confirmed that she had stayed at the Radisson Airport on the nights of July 29, 2008, and July 30, 2008.

31. On September 30, 2009, SA Vallese and FBI SA David Cloney went to the Ramada Conference Center Milwaukee (the "Ramada"), formerly known as the Radisson Airport.

a. SA Vallese spoke to an employee of the Ramada who provided records that showed that BARRETT had made a reservation

---

[9] In July 2008, the hotel was called the Radisson Airport Hotel, however the hotel is currently under the name Ramada Conference Center Milwaukee.

[10] Based on SA Vallese's training and experience, SA Vallese formed the opinion that BARRETT had called a number of hotels in an attempt to determine where ESPN employees, or specifically Individual A, were staying.

18

to stay at the Radisson Airport while Individual A was staying there but that he had not checked in. BARRETT made the reservation with his credit card numbered XXXX XXXX XXXX 3209.

b. SA Vallese inspected the peephole device on the door to the room in which Individual A had stayed while at the Radisson Airport on July 29 and July 30, 2008. The peephole device had been "hacked off" in a manner very similar to the tampered peephole device discovered at the Marriott Nashville at Vanderbilt.

c. SA Vallese interviewed the chief engineer who had worked at the Ramada for 15 years. He stated in his 15 years at the hotel, he had never seen a "peepsight" (peephole device) in that condition.

d. SA Vallese noted that the furniture inside the room did not, however, match the furniture seen in the "eighth" video of Individual A. The Ramada's chief engineer pointed out two features about the room that SA Vallese believed were inconsistent with the room depicted in the "eighth" video. The Ramada chief engineer and another Ramada employee indicated that the hotel had not been re-modeled since July 2008.

19

handsfouryou@yahoo.com

    32.   On August 17, 2009, SA Vallese reviewed records provided by  Yahoo, Inc. related to the e-mail name

handsfouryou@yahoo.com.   Among other things, these records revealed the following:

    a.   The IP address of registration on the account was 65.117.71.218.

    b.   The date the account was created or registered was Sunday, September 25, 2005.

    c.   The account was held under the full name of "Mr. Mark Bennett."  (SA Vallese believes this to be an alias for BARRETT given that multiple IP addresses used to access the account are connected to BARRETT, as set forth below.)

    d.   The location provided at registration was Chicago, Illinois 60606.

    e.   The logs for the account revealed information about the dates, times, and IP addresses for log-in attempts by the specified account.  The following login attempts[11] were found in the logs:

    i.   From the AT&T Mobility IP address an attempt to login was made on January 29, 2009 at 22:42:21 (GMT).

    ii:   From the Combined Insurance IP address an attempt to login was made on January 29, 2009 at 21:28:38 (GMT).

---

[11] The logs provided by Yahoo show attempts to log into the handsfouryou@yahoo.com, regardless of success.  It can be inferred, however, from the IP address information in the TMZ.com e-mail headers that the login attempts described in subparagraphs i. and ii. were in fact successful.

iii.       From March 1, 2009 through July 12, 2009, approximately 60 login attempts were made from an IP address of 24.15.12.168 (the "Comcast IP address").

iv.  From February 10, 2009 through February 13, 2009 at 03:20:45 (GMT) thirteen login attempts were made from an IP address of 70.159.52.99 (the "Radisson IP address").

f.  The most recent login attempt to the account contained in the Yahoo! records provided to SA Vallese was July 22, 2009 at 12:14:29 (GMT) from the IP address of 72.55.104.250. Based on these and additional Yahoo! records that SA Vallese has reviewed related to this account, it appears that this is the last login to the handsfouryou@yahoo.com account.

33.  On or about August 19, 2009, SA Vallese queried the website Whois.Domaintools.com for ISP records related to the Comcast IP address.  The query revealed that Comcast Cable Communications, Inc. was the ISP for the Comcast IP address.

34.  On September 3, 2009, SA Vallese reviewed records provided via facsimile by Comcast Cable Communications.  These records pertained to the Comcast IP address assigned on various dates and times from March 1, 2009, through July 12, 2009.  From those records, SA Vallese learned the following information:

a.  The subscriber's name was "Mike Barrett," and the service address was BARRETT's residence in Westmont, Illinois.

22

b.   The type of service provided to BARRETT was "Residential High Speed Internet Service."

c.   The telephone number associated with this service was (XXX) XXX-5143.

d.   The status on the account was "active" as of August 31, 2009.

35.   On or about September 25, 2009, SA Vallese spoke with a representative of Comcast Cable Communications.  The representative informed SA Vallese that the service at BARRETT's residence remained active on that day.

**The Videos Are Posted To The Internet and Disseminated**

36.   The videos of Individual A were eventually posted to the Internet, widely disseminated, and widely downloaded.

**The Google Post**

37.   SA Vallese reviewed an e-mail from Alberstone dated July 28, 2009, in which he informed SA Vallese that Kroll, a private investigation firm retained by Individual A's lawyers, had identified one video of Individual A in the nude in her hotel room posted on Google video on or about February 12, 2009.  Kroll had also identified a screencapture of Individual A in the nude in her hotel room posted on the Internet on February 13, 2009. Both posts identified Individual A as being the woman in the video or screencapture.

23

38.   On or about September 16, 2009, SA Vallese reviewed a Google Video post identified with number 3342697748210189028 and noted the following:

a.   The video identified Individual A by name, as it was entitled "[Individual A's] Naked Butt," and was forty-two seconds in length.  The video portion of the webpage was disabled, but a number of thumbnails from the captioned video were shown below the video screen portion of the webpage.  Based on SA Vallese's review, these thumbnails were from one of the videos of Individual A SA Vallese had previously reviewed.

b.   The full URL of the video was "video.google.com/videoplay?docid=3342697748210189028."

39.   On September 10, 2009 Google provided records related to video.google.com/videoplay?docid=3342697748210189028.  These records revealed that a subscriber using an email address of handsfouryou@yahoo.com had created the account.  Per Google's records, the subscriber created the account on February 13, 2009 at 3:43:55 a.m. GMT (in the evening on February 12, 2009, Eastern Standard Time), and had later deleted the account.

40.   Because, at nearly the same time that an individual operating the handsfouryou@yahoo.com account created the Google video account close in time to when the individual using handsfouryou@yahoo.com was using the Radisson IP address, SA Vallese contacted, on September 21, 2009, the General Manager of

24

the Radisson Hotel Columbia and Conference Center in Columbia, South Carolina, (the "Radisson Columbia") who provided records via facsimile.   From those records SA Vallese learned the following:

      a.   BARRETT reserved, stayed, and paid for one room for one adult at the Radisson Columbia from February 9, 2009 though February 13, 2009.

      b.   The credit card used by BARRETT was listed as XXXX XXXXXX X1009.

      c.   The company name listed was Combined Insurance Company.

      d.   The range of IP addresses used at the Radisson Columbia were 70.159.52.97 through 70.159.52.126 during February 2009.   Thus, the Radisson IP address, which was identified above as having been used to access the handsfouryou@yahoo.com account on February 12, 2009, was assigned to the Radisson Columbia on February 12, 2009.

    41.   SA Vallese knows from an e-mail from Individual A and records from Individual A's travel for ESPN that she was not in South Carolina on February 12, 2009.

The Dailymotion.com Posts

    41.   On July 27, 2009, SA Vallese reviewed several screencaptures provided by Grossman which showed that all of the Individual A videos were posted to NSFWPOA.com, an adult website,

on or about July 15, 2009.  This post identified the woman in the
videos as a "blonde who looks a lot like a sports blogger
favorite in her hotel room."  The post also states that the
original poster of the videos "labeled it 'Sexy and hot blonde
sports celebrity shows us her all.'"

43.  At the July 27, 2009, meeting, Grossman provided SA
Vallese with a copy of e-mail correspondence between ESPN's
general counsel and the administrator of the website NSFWPOA.com
(hereinafter "NSFWPOA.com's administrator").  SA Vallese has
reviewed that e-mail correspondence.  In the correspondence,
NSFWPOA.com's administrator stated that he had received an e-mail
from a person named "DJ" using the e-mail address
"clevelandga@gmail.com".  The user of clevelandga@gmail.com sent
the e-mail message to NSFWPOA.com's administrator on July 15,
2009.  In the e-mail, the user of clevelandga@gmail.com informed
NSFWPOA.com's administrator of a link to a video on
DailyMotion.com's website.  The user of clevelandga@gmail.com
told NSFWPOA.com's administrator that the woman in the video bore
a "striking resemblance" to Individual A.  NSFWPOA.com's
administrator stated that, based upon the date information
associated with the videos on the DailyMotion.com website, the
videos had been posted approximately four months prior to the
NSFWPOA.com's administrator's e-mail to ESPN, which was dated
July 17, 2009.  Thus, by SA Vallese's calculation, SA Vallese

26

believes that NSFWPOA.com's administrator believed that the videos had been posted in approximately March of 2009.

44. SA Vallese has reviewed a cached copy, that is, a webpage no longer in existence but captured and stored by a third party, of DailyMotion.com dated on or about May 16, 2009. This cached copy shows that the Individual A videos were posted on DailyMotion.com as of that date (but it could have been earlier; May 16, 2009 is merely the date that the cached copy was captured by the third party). Based on his review of that cached webpage and his conversations with Grossman, SA Vallese has learned the following:

a.   The user who posted the videos of Individual A at DailyMotion.com went by the username of GOBLAZERS1. According to the webpage, GOBLAZERS1 had posted 35 videos on Dailymotion.com.

b.   The post was entitled "Hot Blonde (view in original format)." and had another, smaller label stating "Sexy and hot blonde sports celebrity shows us her all."

c.   Aside from the Individual A videos, a number of other videos posted by GOBLAZERS1 appear on the webpage. From the screenshots of these videos, it appears that these videos have also been taken of naked women through the peephole of a door. Each video has a opaque stamp over it reading "explicit content."

27

( )                              ( )

d.    Grossman provided SA Vallese with a copy of e-mail correspondence between himself and the NSFWPOA.com administrator on July 19, 2009.  SA Vallese has reviewed that e-mail correspondence, in which NSFWPOA.com's administrator stated that someone informed him that GOBLAZERS1 account profile on Dailymotion.com said that GOBLAZERS1 was a 49 year-old male.

45.  On September 22, 2009, SA Vallese reviewed an Internet posting made to the website www.ninjadude.com.  The writer of the post, among other things, stated the following:

a.    The user of GOBLAZERS1 joined DailyMotion.com on February 15, and the first apparent batch of videos were uploaded February 17.

b.    The user of GOBLAZERS1 abruptly shut down his page on DailyMotion.com, then permanently removed his entire account sometime after 1:00 p.m. on Saturday, July 19.[12]

**Substantial Emotional Distress To The Victim**

46.  In SA Vallese's interviews of Individual A, she informed SA Vallese of the following:

a.    For the period of December 1, 2006, through the present, Individual A was a resident of a state other than Illinois, Oregon, South Carolina, Tennessee, and Wisconsin.

---

[12] Although the writer of the article on the webpage did not provide the year 2009, it is SA Vallese's opinion that 2009 applies to all of the dates listed. It is reasonable to believe that Saturday, July 19, 2009 is the date that the account was removed, given SA Vallese's knowledge of the matter and SA Vallese's interviews with various witnesses.

b.  Individual A first became aware of the videos on Thursday, July 16, 2009. Individual A was in Los Angeles County when she first viewed the videos. When she viewed them for the first time, Individual A knew instantly that they were videos of her, and Individual A called her mother and father in a panic. Individual A thought that her career was over.

c.  Individual A returned home and wanted to get changed out of her clothes, but did not know where to change because she felt like someone was watching her.

d.  As a result of this incident, Individual A did not sleep well and had constant anxiety. In addition, Individual A was having trouble breathing and felt sick all of the time. She was concerned there might be more video and wanted to vomit just thinking about it.

e.  Individual A felt ashamed, embarrassed, and that everyone was staring at her and undressing her with their eyes. Individual A had fear regarding returning to work because the person who took the videos might still be watching her.

f.  Individual A did not have anything to do with the videos being made nor with their being posted to the Internet and was not aware of who had done it. Individual A neither consented nor knew about the taking of the videos. The videos being taken and made public was the "worst thing" Individual A had ever been through in her life.

29

g.   Individual A felt like she might never get past what had happened.

**Public Records for BARRETT**

47.   On or about September 3, 2009, SA Vallese reviewed a report generated by the online, public records database CLEAR that revealed the following information about an individual named Michael Barrett.  Because of the information discussed below, SA Vallese has determined that it is probable that this is BARRETT:

a.   BARRETT's year of birth is 1961, and his Social Security Number XXX-XX-5371 was issued in Oregon in 1974.

b.   Possible employers listed for BARRETT were "Combined" and "Nonna Emilias."[13]

c.   A possible address associated with BARRETT was his residence in Westmont, Illinois, with a telephone number of (XXX) XXX-5143.

d.   A mortgage deed was held by America's Wholesale Lender for the buyer, BARRETT, of the residence in Westmont, Illinois.  The contract date for the records was March 30, 2006.

---

[13] On September 18, 2009, SA Vallese performed an Internet query for "Nonna Emilias."  The first result of SA Vallese's query revealed a restaurant named Nonna Emilia's Ristorante in Oregon.

( )                                    ( )

e.   The report also listed several possible addresses associated with BARRETT.  Among these addresses were addresses in Oregon, specifically including Portland, Oregon.[14]

48.   On September 21, 2009, SA Vallese reviewed credit reports from Experian, Equifax, and Transunion for BARRETT with Social Security Number XXX-XX-5371.  From those records SA Vallese learned the following:

a.   Each report listed BARRETT's Westmont, Illinois, address as his current address.

b.   Each report listed Combined Insurance as BARRETT's employer.

c.   Transunion listed a credit inquiry made by "AT&T-WS"[15] on July 28, 2008.  Equifax listed a credit inquiry[16] made by "AT&T Mobility-NBI" on July 28, 2008.

Summary Timeline of Significant Events

49.   Based on the foregoing evidence, the following provides a summary timeline of some significant events:

---

[14] The user GOBLAZERS1 posted the Individual A videos to DailyMotion.com's website.  Based on the user's naming convention, it is possible that the user is referring to the Portland Trailblazers of the National Basketball Association.

[15] Based on SA Vallese's experience SA Vallese believes "AT&T WS" to stand for AT&T Wireless, and SA Vallese know that AT&T Mobility is the corporate name for AT&T Wireless.

[16] Based on SA Vallese's experience, SA Vallese knows that when an individual seeks to set up wireless phone service with a wireless service provider, some providers will conduct a credit inquiry on the buyer prior to issuing service.

31

a.   On or about July 28, 2008, BARRETT made several calls to the Radisson Airport Hotel in Milwaukee, Wisconsin where Individual A was staying.

b.   On or about September 2, 2008, BARRETT requested and received prior to his arrival the hotel room next to Individual A at the Nashville Marriott hotel.  BARRETT stayed in the room next to Individual A's room on September 4, 2008.  This is when most of the videos of Individual A naked in her room were recorded.

c.   On September 4, 2008, BARRETT sent three multimedia messages from his phone to the email address "handsfouryou@".

d.   On January 27, 2009, at 2:29 pm, BARRETT sent three multimedia messages to "mdb1861@yahoo" from his phone.

e.   On January 28 and 29, 2009, the videos of Individual A were offered for sale to TMZ.com, located in Los Angeles, California, by the user of the email account handsfouryou@yahoo.com.  This email address ties both to BARRETT and his residence in Westmont, Illinois, as recently as July 12, 2009.  The account was last accessed on July 22, 2009.

f.   On or about February 12, 2009, one of the Individual A videos was posted to Google video by handsfouryou@yahoo.com.  BARRETT was in South Carolina, and the handsfouryou@yahoo.com account was accessed from the Radisson

Columbia, where he was staying on that date.  At that time,
Individual A was not in South Carolina.

      g.  Soon afterward, all of the known videos of
Individual A were posted on the Internet and widely disseminated.
The video posts made to the Internet were initially found on
DailyMotion.com posted by a user, GOBLAZERS1, who described
himself as a 49 year-old male, an age close to BARRETT whose year
of birth is 1961.

      h.  In July of 2009, Individual A learned of the
videos while in Los Angeles, California.

      i.  The GOBLAZERS1 and Google Video accounts where the
Individual A videos were posted were deleted sometime after
mid-July, 2009.

**CONCLUSION**

    50.  Based on the foregoing, I respectfully submit that
there is probable cause to support a criminal complaint and
arrest warrant for BARRETT, for a violation of 18 U.S.C.
§ 2261A(2)(A), Stalking.

                   /S/
_____
Tanith Rogers
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to me
this 2nd day of October, 2009
    ALICIA G. ROSENBERG
_____
HON. ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE

33

 

# United States District Court

CENTRAL _____ DISTRICT OF _____ CALIFORNIA

UNITED STATES OF AMERICA

v.

MICHAEL DAVID BARRETT,
aka Mark Bennett,

**WARRANT FOR ARREST**
ON COMPLAINT

CASE NUMBER:

**09-2270M**

To:  The United States Marshal or any
     Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest  MICHAEL DAVID BARRETT
                                              Name
and bring him forthwith to the nearest Judge/Magistrate to answer a
complaint charging him with Interstate Stalking.

in violation of Title 18 United States Code, Section 2261A(2)(a)
              with Bail fixed at $ALICIA G. ROSENBERG

REC: BY AUSA              DETENTION

Date:   October 2, 2009

                          ALICIA G. ROSENBERG
                          Name of Judge/Magistrate Judge


                          ALICIA G. ROSENBERG
                          Signature of Judge/Magistrate Judge

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME & TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY:

DEFENDANT'S NAME: _____

ALIAS: _____

LAST KNOWN RESIDENCE: _____

LAST KNOWN EMPLOYMENT: _____

PLACE OF BIRTH: _____

DATE OF BIRTH: _____

SOCIAL SECURITY NUMBER: _____

HEIGHT: _____   WEIGHT: _____

SEX: _____   RACE: _____

HAIR: _____   EYES: _____

SCARS, TATTOOS, OTHER DISTINGUISHING MARKS: _____

_____

_____

FBI NUMBER: _____

COMPLETE DESCRIPTION OF AUTO: _____

_____

INVESTIGATIVE AGENCY AND ADDRESS: _____

_____

_____

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 3.2.3 (Chicago)
## CRIMINAL DOCKET FOR CASE #: 1:09-cr-00810 All Defendants
## Internal Use Only

Case title: USA v. Barrett

Other court case number: 09-227 USDC CD/CA

Date Filed: 10/03/2009

Date Terminated: 10/05/2009

Assigned to: Honorable Arlander Keys

### Defendant (1)

**Michael David Barrett**
*TERMINATED: 10/05/2009*
*also known as*
Mark Bennett
*TERMINATED: 10/05/2009*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| 18:2261.F interstate stalking | |

| **Plaintiff** | | |
|---|---|---|
| **USA** | represented by | **Steven Grimes** |
| | | United States Attorney's Office (NDIL) |
| | | 219 South Dearborn Street |

Suite 500
Chicago , IL 60604
(312) 469-6049
Email: steven.grimes2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**AUSA**
United States Attorney's Office (NDIL)
219 South Dearborn Street
Suite 500
Chicago , IL 60604
(312) 353-5300
Email: USAILN.ECFAUSA@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Pretrial Services**

.

435-5545
Email:
ilnptdb_Court_Action_Notice@ilnpt.uscourts.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2009 | | ARREST of defendant Michael David Barrett (emd, ) (Entered: 10/07/2009) |
| 10/03/2009 | 1 | Rule 5(c)(3) waiver signed by Judge Honorable Arlander Keys as to Michael David Barrett (1) (emd, ) (Entered: 10/07/2009) |
| 10/03/2009 | 2 | MINUTE entry before the Honorable Arlander Keys: Removal proceedings held. Defendant appears in response to arrest on 10/2/09. Defendant waives identity hearing. Richard M. Beuke appears as counsel for defendant. Detention hearing set for 10/5/09 at 1:0pm. The defendant is ordered detained. Mailed notice (emd, ) (Entered: 10/07/2009) |
| 10/05/2009 | 3 | OWN recognizance Bond as to Michael David Barrett (emd, ) (Entered: 10/07/2009) |
| 10/05/2009 | 4 | ORDER Setting Conditions of Release as to Michael David Barrett (1) $4500 Signed by the Honorable Arlander Keys on 10/5/09. (Redacted image) (emd, ) (Entered: 10/07/2009) |
| 10/05/2009 | 5 | MINUTE entry before the Honorable Arlander Keys:Detention hearing held. The defendant is ordered voluntarily removed to the Eastern District of California at Los Angeles. The defendant is ordered released. (Terminated defendant Michael David Barrett). Mailed notice (emd, ) (Entered: 10/07/2009) |
| 10/08/2009 | 6 | CERTIFIED and Transmitted to USDC, Los Angeles, CA the complete record consisting of cover letter, complete case file, certified copy of docket entries by |

certified mail no. 7006 0100 0001 7313 3491 as to Michael David Barrett. (emd, ) (Entered: 10/08/2009)

A TRUE COPY--ATTEST
MICHAEL W. DOBBINS, CLERK

By

DEPUTY CLERK
U.S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS

DATE: 10-8-09

10/8/2009 3:30 PM