GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
WESLEY L. HSU (SBN: 188015)
Assistant United States Attorney
Chief, Cyber and Intellectual
Property Crimes Section
      United States Courthouse
      312 North Spring Street, 12th floor
      Los Angeles, California 90012
      Telephone:  (213) 894-3045
      Facsimile:  (213) 894-8601
      E-mail: wesley.hsu@usdoj.gov

Attorney for Plaintiff
United States of America

                  UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,        ) CR No. 09-1215-R
                                 )
                Plaintiff,       ) PLEA AGREEMENT FOR DEFENDANT
                                 ) MICHAEL DAVID BARRETT
            v.                   )
                                 )
MICHAEL DAVID BARRETT,           )
   aka "Mark Bennett,"           )
   aka "handsfouryou,"           )
   aka "GOBLAZERS1,"             )
                                 )
                Defendant.       )

      1.  This constitutes the plea agreement between MICHAEL
DAVID BARRETT ("defendant") and the United States Attorney's
Office for the Central District of California ("USAO") in the
above-entitled case.  This agreement is limited to the USAO and
cannot bind any other federal, state or local prosecuting,
administrative or regulatory authorities.  This agreement does
not bind the USAO, or any other federal, state or local
prosecuting, administrative or regulatory authorities with

respect to prosecuting the defendant for conduct toward other victims.

<u>PLEA</u>

2.  Defendant waives venue and gives up the right to indictment by a grand jury and agrees to plead guilty to a single-count information as filed in <u>United States v. Michael David Barrett</u>, CR 09-1215-R.

<u>NATURE OF THE OFFENSE</u>

3.  In order for defendant to be guilty of a violation of Title 18, United States Code, Section 2261A(2)(A), as charged in the information, the following must be true: (1) with the intent (a) to harass or (b) to cause substantial emotional distress; (2) to a person in another State; (3) defendant used the mail, any interactive computer service, or any facility of interstate or foreign commerce; (4) to engage in a course of conduct; (5) that causes substantial emotional distress to that person. Defendant admits that defendant is, in fact, guilty of this offense as described in the information.

<u>PENALTIES</u>

4.  Pursuant to Title 18, United States Code, Section 2261(b)(5), the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 2261A(2)(A), as alleged in the information is 5 years imprisonment, a three-year period of supervised release, a fine of $250,000, and a mandatory special assessment of $100.

5.  Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if

defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

7. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8. Defendant understands that defendant will be required to pay full restitution to Victim Andrews. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the amount of restitution is not restricted to the count to which defendant is pleading guilty and may include losses arising from charges not prosecuted pursuant to this agreement as well as all relevant conduct in connection with those charges.

<u>FACTUAL BASIS</u>

9. Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts

includes facts sufficient to support a plea of guilty to the charges described in this agreement and to establish the sentencing guideline factors set forth in paragraph 13 below.  It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

Between on or about January 28, 2008, and on or about July 22, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant MICHAEL DAVID BARRETT, also known as ("aka") "Mark Bennett," aka "handsfouryou," aka "GOBLAZERS1" ("defendant BARRETT"), with the intent to harass and to cause substantial emotional distress to a person in another state, namely, Erin Andrews ("Victim Andrews"), used facilities of interstate commerce, including cellular telephone networks, electronic mail, interstate wires, and the Internet, to engage in a course of conduct that caused substantial emotional distress to Victim Andrews.

Defendant's course of conduct included, amongst other things, the following:

On or about January 28, 2008, and January 29, 2008, when Victim Andrews was in a different state from defendant BARRETT, defendant BARRETT used his cellular phone to make calls to approximately seven (7) hotels in Columbus, Ohio, to identify where Victim Andrews would be staying beginning on February 4, 2008.  On or about January 29, 2008, when Victim Andrews was in a

different state from defendant BARRETT, defendant
BARRETT used the interstate wires to make a reservation
at a hotel in Columbus, Ohio (the "Columbus hotel"),
where he knew that Victim Andrews would be staying.

On or about February 4, 2008, defendant BARRETT
traveled from Illinois to Ohio.  On or about February
4, 2008, defendant BARRETT stayed in the hotel room
next door to Victim Andrews in the Columbus hotel.  On
or about February 4, 2008, defendant BARRETT
temporarily removed the peephole device in the door of
the room in the Columbus hotel in which Victim Andrews
was staying.  On or about February 5, 2008, defendant
BARRETT surreptitiously shot through the Columbus hotel
room's peephole a video of Victim Andrews naked in the
room (the "Columbus video") without Victim Andrews'
knowledge or consent.  On or about February 5, 2008,
defendant BARRETT used the Internet to send the
Columbus video to an e-mail account that he controlled.
On or about February 6, 2008, defendant BARRETT paid
for his room in the Columbus hotel using American
Express credit card number XXXX XXXXXX X2007, a
transaction that used the interstate wires.

On or about February 20, 2008, defendant BARRETT,
using American Express credit card number XXXX XXXXXX
X0067, purchased on the Internet a "People Search" of
Victim Andrews and obtained personal information
related to Victim Andrews.

On or about July 28, 2008, defendant BARRETT
purchased with a credit card an LG Shine cellular phone
with a video camera.  On or about July 28, 2008, and
July 29, 2008, defendant BARRETT used his LG Shine
cellular phone to make calls to approximately 14 hotels
in Milwaukee, Wisconsin, to identify where Victim
Andrews would be staying on July 29, 2008, and July 30,
2008.  On or about July 29, 2008, defendant BARRETT
used his LG Shine cellular phone to call a hotel in
Milwaukee, Wisconsin, where Victim Andrews would be
staying on July 29, 2008, and made a room reservation
for himself using his Capital One Mastercard numbered
numbered XXXX XXXX XXXX 3209.  On or about July 30,
2008, defendant BARRETT traveled from Illinois to
Wisconsin.  On or about July 30, 2008, defendant
BARRETT altered the peephole device in the door of the
hotel room in Milwaukee, Wisconsin, in which Victim
Andrews was staying.

On or about September 2, 2008, defendant BARRETT
called a hotel in Nashville, Tennessee, where Victim
Andrews would be staying on September 4, 2008, and made
a room reservation for himself on September 4, 2008,
specifically requesting a room adjoining Victim
Andrews' room.  On or about September 2, 2008,
defendant BARRETT caused a confirmation of his
Nashville hotel reservation to be sent via the Internet
to his work e-mail address.

On or about September 4, 2008, defendant BARRETT traveled from Illinois to Tennessee.  On or about September 4, 2008, defendant BARRETT altered the peephole device in the door of the Nashville hotel room in which Victim Andrews was staying.  On or about September 4, 2008, defendant BARRETT surreptitiously shot through the Nashville hotel room's peephole several videos of Victim Andrews naked in her Nashville hotel room (collectively with the Columbus video, "the videos") without Victim Andrews' knowledge or consent. On or about September 4, 2008, defendant BARRETT sent three of the videos from his phone to his e-mail account, handsfouryou@yahoo.com.  On or about September 5, 2008, defendant BARRETT paid for his stay at the Nashville hotel using his American Express credit card numbered XXXX XXXXXX X1009 and his Capital One Mastercard numbered XXXX XXXX XXXX 3209.

On or about January 28, 2009, defendant BARRETT, using the alias "Mark Bennett" and the e-mail account handsfouryou@yahoo.com, sent an electronic mail regarding the videos to TMZ.com in Los Angeles, California.  On or about January 29, 2009, using the alias "Mark Bennett" and the e-mail account handsfouryou@yahoo.com, defendant BARRETT sent an electronic mail regarding the videos to TMZ.com in Los Angeles, California.

On or about February 2, 2009, defendant BARRETT made interstate phone calls to attempt to locate a hotel at which Victim Andrews was scheduled to stay.

On or about February 12, 2009, defendant BARRETT used the Internet from Columbia, South Carolina, when Victim Andrews was in a different state, to create an account on the website Google Video.  On or about February 12, 2009, defendant BARRETT used the Internet, and specifically the Google Video account described above, from Columbia, South Carolina, when Victim Andrews was in a different state, to post one of the videos to the Internet with the intent to harass and cause substantial emotional distress to Victim Andrews. On or about February 12, 2009, when Victim Andrews was in a different state, defendant BARRETT, with the intent to harass and cause substantial emotional distress to Victim Andrews, named the video that he posted on Google Video "Erin Andrews Naked Butt."

On or about each of February 16, March 1, March 5, and March 11, 2009, when Victim Andrews was in a different state, with the intent to harass and cause substantial emotional distress to Victim Andrews, defendant BARRETT used the Internet and the screenname "GOBLAZERS1" to post videos to a French website.  On or about February 16, 2009, when Victim Andrews was in a different state, with the intent to harass and cause substantial emotional distress to Victim Andrews, defendant BARRETT used the Internet to label one of the

videos "Sexy and Hot Blonde Sports celebrity shows us her all."

On or about July 17, 2009, Victim Andrews became aware of the videos while in Los Angeles County and suffered substantial emotional distress.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

10.   By pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial.  (In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel – and, if necessary, to have the court appoint counsel if defendant cannot afford counsel - at every other stage of the proceedings.)

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses against defendant.

f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

1   g) The right not to be compelled to testify, and, if
2   defendant chose not to testify or present evidence, to have that
3   choice not be used against defendant.

4   By pleading guilty, defendant also gives up any and all
5   rights to pursue any affirmative defenses, Fourth Amendment or
6   Fifth Amendment claims, and other pretrial motions that have been
7   filed or could be filed.

8   <u>WAIVER OF DNA TESTING</u>

9   11.  Defendant has been advised that the Federal Bureau of
10  Investigation has in its possession numerous items seized from
11  defendant's person and residence on or about October 2, 2009, as
12  well as peephole devices taken from the doors of hotel rooms in
13  Nashville, Tennessee, and Milwaukee, Wisconsin, all of which
14  could be subjected to DNA testing.  Defendant understands that
15  the USAO does not intend to conduct such DNA testing.  Defendant
16  understands that, before entering a guilty plea pursuant to this
17  agreement, defendant could request DNA testing of evidence in
18  this case.  Defendant further understands that, with respect to
19  the offense to which defendant is pleading guilty pursuant to
20  this agreement, defendant would have the right to request DNA
21  testing of evidence after conviction under the conditions
22  specified in 18 U.S.C. § 3600.  Knowing and understanding
23  defendant's right to request DNA testing, defendant knowingly and
24  voluntarily gives up that right with respect to both the specific
25  item listed above and any other items of evidence there may be in
26  this case that might be amenable to DNA testing.  Defendant
27  understands and acknowledges that by giving up this right,
28  defendant is giving up any ability to request DNA testing of

evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type.  Defendant further understands and acknowledges that by giving up this right, defendant will never have another opportunity to have the evidence in this case, whether or not listed above, submitted for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offense to which defendant is pleading guilty.

<u>SENTENCING FACTORS</u>

12.  Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence.  Defendant understands, however, that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime of conviction.

13.  Defendant and the USAO agree and stipulate to the following applicable sentencing guideline factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 18 | U.S.S.G. § 2A6.2(a) |
| Pattern of Activity Involving Stalking the Same Victim | : | +2 | U.S.S.G. § 2A6.2(b)(1)(D) |
| Acceptance of Responsibility | : | <u>-3</u> | U.S.S.G. § 3E1.1 |
| Total offense level | : | 17 | |

The USAO will agree to a downward adjustment for acceptance of responsibility (and, if applicable, move for an additional level under § 3E1.1(b)) only if the conditions set forth in paragraph 17) are met.  Subject to paragraph 16, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures, relating to either the applicable Offense Level or the Criminal History Category, be imposed.  If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

14.  There is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the USAO, pursuant to the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7), further reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines.

16.  The stipulations in this agreement do not bind either the United States Probation Office or the Court.  Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's sentencing guidelines

12

calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.

<u>DEFENDANT'S OBLIGATIONS</u>

17. Defendant agrees that he will:

a) Plead guilty as set forth in this agreement.

b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) Not knowingly and willfully fail to: (i) appear as ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) Pay the applicable special assessment at or before the time of sentencing, unless defendant lacks the ability to pay.

<u>CONSENT TO PROTECTIVE ORDER AND WAIVER OF 18 U.S.C. § 1514(b)(1)</u>
<u>PROCEDURES</u>

18. In addition to defendant's obligations set forth in paragraph 17 above, defendant further agrees that he will consent to the entry of a protective order pursuant to 18 U.S.C. § 1514(b)(1) in both the instant criminal case and in a parallel miscellaneous civil case that restrains defendant from harassing, coming within 100 yards of, or otherwise contacting or attempting

to contact Erin Andrews ("Victim Andrews") or her family,
including but not limited to her parents, siblings, other
relatives, any spouse or significant other with whom Victim
Andrews may share an intimate relationship (whether existing now
or during the pendency of any term of the protective order
entered by the Court), and any children of Victim Andrews
(collectively, "victim's family") for a period of three years and
agrees that such order will be stayed such that it becomes
effective or "issues," as that term is used in 18 U.S.C.
§ 1514(b)(4), beginning on the first date of any term of
supervised release imposed on the defendant (the "federal
protective order").

19.   The defendant understands that, the federal protective
order may be renewed if, at any time within ninety (90) days
before the expiration of the protective order, an attorney for
the United States applies for a new protective order pursuant to
18 U.S.C. § 1514, and the Court grants such application.
Defendant agrees not to oppose an application by an attorney on
behalf of the United States for a new order for an additional
term of three years pursuant to 18 U.S.C. § 1514(b)(4), provided
the new order is sought during the time that the Court retains
jurisdiction over the federal protective order.

20.   The defendant understands and agrees that the federal
protective order may be subject to modification by the Court upon
motion of either party, or *sua sponte* by the Court, provided that
each party is afforded notice and a meaningful opportunity to be
heard regarding any proposed modification to the order.  The
provision of such notice to Victim Andrews by defendant shall be

made by notice to the Victim-Witness Coordinator for the United States Attorney's Office for the Central District of California.

21.  The defendant further understands and agrees that a violation of the federal protective order may be considered contempt of court, which may expose him to additional penalties.

22.  The defendant further knowingly and voluntarily agrees and consents to the filing of a parallel, miscellaneous civil case pursuant to 18 U.S.C. § 1514 so that the Court can and will retain jurisdiction over the federal protective order in that miscellaneous civil case, beyond the termination of any period of incarceration and supervised release, and the corresponding termination of the Court's jurisdiction in the criminal case. The defendant knowingly, voluntarily and specifically agrees and consents to the Court's maintaining jurisdiction over the federal protective order in this fashion.

23.  The defendant understands that 18 U.S.C. § 1514 contemplates the filing of a separate civil action by the United States by complaint, and in which he would be a civil defendant. The defendant further understands that, under 18 U.S.C. § 1514(b)(1), the Court may issue a protective order prohibiting harassment of a victim in a federal criminal case if the Court, after a hearing, finds by a preponderance of the evidence that harassment of an identified victim or witness in a federal criminal case exists.  The defendant understands that, at such hearing, he has the right to present evidence and cross-examine witnesses.  The defendant knowingly and voluntarily waives the filing of a separate civil action by the United States by complaint; knowingly and voluntarily agrees to the opening of a

parallel, miscellaneous civil case pursuant to 18 U.S.C. § 1514 for that purpose; and knowingly and voluntarily agrees that the Court may consider the United States's motion for the federal protective order at the sentencing hearing in this case; and knowingly and voluntarily agrees that the sentencing proceedings in this case shall also serve as the hearing required by 18 U.S.C. § 1514(b)(1), and that defendant has been given adequate notice of such a hearing.

24.   The defendant knowingly and voluntarily waives any other procedures, requirements or proceedings pursuant to 18 U.S.C. § 1514 and understands that by knowingly and voluntarily consenting to both the federal protective order and the procedures outlined above, he waives and gives up any further rights afforded to him under 18 U.S.C. § 1514.  In addition, defendant understands that, if the proposed federal protective order and procedure is accepted by the Court, there will not be further proceedings other than those set forth above before the entry of the federal protective order.  The defendant knowingly and voluntarily agrees with and consents to the waiver of such Section 1514 rights and procedures.

25.   In addition, defendant agrees not to oppose any restraining order which may be sought against him by Victim Andrews in any state or local court within ten years from the date of sentencing.

<u>THE USAO'S OBLIGATIONS</u>

26.   If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

1           a) To abide by all sentencing stipulations contained in

2 this agreement.

3           b) Except for criminal tax violations (including

4 conspiracy to commit such violations chargeable under 18 U.S.C.

5 § 371), not to further prosecute defendant for violations of 18

6 U.S.C. § 2261A arising out of defendant's taking (and later

7 posting) of videos through peepholes of women in their hotel

8 rooms where defendant later posted the videos to DailyMotion.com

9 and Flickr! between on or about February 16, 2009, and on or

10 about June 22, 2009.  Defendant understands that the USAO and all

11 other federal, state, or local prosecuting or regulatory

12 authorities are free to prosecute defendant for any other

13 unlawful past conduct, or any unlawful conduct that occurs after

14 the date of this agreement.  Defendant also understands that the

15 USAO and the FBI in Los Angeles are not prohibited from assisting

16 all other federal, state, and local prosecuting, investigating,

17 and regulatory agencies in prosecuting defendant's conduct in

18 relation to the taking through peepholes and posting of the

19 videos of the nude women in their hotel rooms.  Defendant agrees

20 that at the time of sentencing the Court may consider the

21 uncharged conduct in determining the applicable Sentencing

22 Guidelines range, where the sentence should fall within that

23 range, the propriety and extent of any departure from that range,

24 and the determination of the sentence to be imposed after

25 consideration of the sentencing guidelines and all other relevant

26 factors.

27           c) At the time of sentencing, provided that defendant

28 demonstrates an acceptance of responsibility for the offense up

to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

d) Not to seek a sentence of imprisonment above the mid-point of the Sentencing Guidelines range for imprisonment that corresponds to an offense level of 17 and defendant's criminal history category as calculated by the Court.

<u>BREACH OF AGREEMENT</u>

27.  If defendant, at any time between the execution of this agreement and defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence*,* knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all of their obligations under this agreement.

28.  Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

c) Defendant agrees that: i) any statements made by defendant, under oath, at the guilty plea hearing; ii) the stipulated factual basis statement in this agreement; and iii) any evidence derived from such statements, are admissible against defendant in any future prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

<u>LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

29.  Defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution, and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, and (b) the Court imposes a sentence within or below the range corresponding to a total offense level of 17, and the applicable criminal history category as determined by the Court.  Notwithstanding the foregoing, defendant retains any ability defendant has to appeal the Court's determination of defendant's criminal history category and the conditions of

supervised release imposed by the Court, with the exception of the following:

       a.   Standard conditions set forth in district court General Orders 318 and 01-05;

       b.   Defendant shall cooperate in the collection of a DNA sample from defendant.

       c.   Defendant shall participate in mental health treatment as directed by the Probation Officer, which may include medication, testing, evaluation, counseling, and residential treatment until discharged by the treatment provider with the approval of the Probation Officer; however, the defendant retains the right to appeal any supervised release condition requiring residential treatment unless such residential treatment is imposed pursuant to court approval;

       d.   Defendant shall abide by all rules, requirements, and conditions of such mental health treatment and shall take all medication in the manner and dosage prescribed by his mental health and/or other health care provider(s), including by injection;

       e.   The Probation Officer shall disclose the Presentence Report and/or any previous mental health evaluations to the mental health and/or other medical treatment provider;

       f.   The defendant shall not contact, or attempt to contact, Victim Andrews or her family, including but not limited to her parents, siblings, other relatives, any spouse or significant other with whom victim may share an intimate relationship (whether existing now or during the pendency of any term of supervised release), and any children of Victim Andrews,

directly or indirectly by any means, including but not limited to in person, by mail, telephone, email, text message, or otherwise via the internet or other electronic means, or through a third party;

g.   The defendant shall not attempt to locate Victim Andrews or her family or attempt to obtain information concerning the whereabouts, phone numbers, email addresses, or other personal identifiers of Victim Andrews or victim's family;

h.   The defendant shall remain at least 100 yards from Victim Andrews at all times;

i.   The defendant shall not travel on any commercial airline without prior approval of the Probation Officer;

j.   The defendant shall not stay in a hotel without prior approval of the Probation Officer;

k.   The defendant's employment shall be approved by the Probation Officer, and any change in employment must be pre-approved by the Probation Officer.  The defendant shall submit the name and address of the proposed employer to the Probation Officer at least 10 days prior to any scheduled change. Defendant agrees and understands that his employment information shall be provided to the Victim Andrews or her representatives by the Probation Office.

l.   The defendant's residence shall be approved by the Probation Officer, and any change in residence must be pre-approved by the Probation Officer.  The defendant shall submit the address of the proposed residence to the Probation Officer at least 10 days prior to any scheduled move.  Defendant agrees and

understands that his residence information shall be provided to Victim Andrews by the Probation Office.

30.   The USAO gives up its right to appeal the sentence, provided that (a) the Court in determining the applicable guideline range does not depart downward in offense level or criminal history category, (b) the Court determines that the total offense level is 17 or above, and (c) the Court imposes a sentence within or above the range corresponding to the determined total offense level and criminal history category.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

31.   Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all of their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

<u>COURT NOT A PARTY</u>

32.   The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations.  Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum

1  established by statute, defendant cannot, for that reason,

2  withdraw defendant's guilty plea, and defendant will remain bound

3  to fulfill all defendant's obligations under this agreement.  No

4  one – not the prosecutor, defendant's attorney, or the Court –

5  can make a binding prediction or promise regarding the sentence

6  defendant will receive, except that it will be within the

7  statutory maximum.

8  <u>NO ADDITIONAL AGREEMENTS</u>

9  33.  Except as set forth herein, there are no promises,

10  understandings or agreements between the USAO and defendant or

11  defendant's counsel.  Nor may any additional agreement,

12  understanding or condition be entered into unless in a writing

13  signed by all parties or on the record in court.

14  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

15  34.  The parties agree and stipulate that this Agreement

16  will be considered part of the record of defendant's guilty plea

17  hearing as if the entire Agreement had been read into the record

18  of the proceeding.

19  This agreement is effective upon signature by defendant and

20  an Assistant United States Attorney.

21  AGREED AND ACCEPTED

22  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA
23
   GEORGE S. CARDONA
24  Acting United States Attorney

25  _____          12/10/09

26  WESLEY L. HSU                          _____
   Assistant United States Attorney          Date
27  Chief, Cyber and Intellectual
   Property Crimes Section

28

23

1    I have read this agreement and carefully discussed every
2  part of it with my attorney.  I understand the terms of this
3  agreement, and I voluntarily agree to those terms.  My attorney
4  has advised me of my rights, of possible defenses, of the
5  Sentencing Guideline provisions, and of the consequences of
6  entering into this agreement.  No promises or inducements have
7  been made to me other than those contained in this agreement.  No
8  one has threatened or forced me in any way to enter into this
9  agreement.  Finally, I am satisfied with the representation of my
10  attorney in this matter.

11

12  _____          12/10/09
    MICHAEL DAVID BARRETT                     Date
13  Defendant

14

15    I am Michael David Barrett's attorney.  I have carefully
16  discussed every part of this agreement with my client.  Further,
17  I have fully advised my client of his rights, of possible
18  defenses, of the Sentencing Guidelines' provisions, and of the
19  consequences of entering into this agreement.  To my knowledge,
20  my client's decision to enter into this agreement is an informed
21  and voluntary one.

22

23  _____          12/10/09
    DAVID WILLINGHAM                          Date
24  ANDREW ESBENSHADE
    Caldwell, Leslie & Proctor PC
25  Counsel for Defendant
    Michael David Barrett

26

27

28

24